**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY HAWKINS,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SETERUS, INC., ONEWEST BANK,<br>FSB, and OCWEN LOAN<br>SERVICING, LLC,<br>　　　　　　　　　Defendants. | Civ. No. 16-1407 (KM)<br><br>**MEMORANDUM OPINION and<br>ORDER** |

**MCNULTY, U.S.D.J.:**

　　The plaintiff, Gregory Hawkins, brings this action against his mortgage lender and loan servicers, claiming breach of contract based on their failure to enter into a modification of his mortgage loan under the Home Affordable Modification Program (HAMP). Now before the Court are two motions to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). The first is brought by defendant Seterus, Inc. (ECF no. 7). The second is brought by defendants Octwen Loan Servicing, LLC ("Ocwen") and OneWest Bank, FSB ("OneWest").[1] For the reasons stated herein, the motions will be denied.

**I.　APPLICABLE STANDARD**

　　FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view

---

[1]　OneWest states that it would properly be named as CIT Bank, N.A.

1

them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

## II.  BACKGROUND

I focus on the allegations of the Complaint (ECF no. 1-1 at 6), which are presumed to be true for purposes of this motion only.

On December 7, 2006, the plaintiff, Gregory Hawkins, took out a fixed-rate $334,500 loan, secured by a mortgage on his home in Union, New Jersey. (Cplt. ¶¶ 1, 6) The monthly payments of principal and interest were $1968.09. (Cplt. ¶ 8) On January 17, 2012, the mortgage was assigned to OneWest. (Cplt. ¶ 10) On May 9, 2012, OneWest filed a state court foreclosure complaint (No. F-8528-12), and a final judgment by default was entered on December 19, 2012. (Cplt. ¶¶ 11, 12) In this period, and through July 2015, the loan was serviced by Ocwen. (Cplt. ¶ 13)

On September 18, 2014, Hawkins applied to Ocwen, a HAMP participant, for a modification of the mortgage loan. (Cplt. ¶ 14) HAMP initially requires that that the appliant participate in a Trial Period Plan ("TPP"). (Cplt. ¶¶ 16, 17)

On September 24, 2014, Hawkins received a letter from Ocwen placing him on a TPP. It required three monthly payments of $2214.09, due on November 1, 2014, December 1, 2014, and January 1, 2015. Hawkins made the three payments. (Cplt. ¶¶ 18, 19)

On November 10, 2014, an Ocwen "relationship manager" named Gerald Asplund told Hawkins that liens had appeared on a judgment search. On November 19, 2014, Hawkins' representative replied that the liens were "not against Hawkins" and on December 11, 2014 Hawkins supplied an Affidavit of Title to that effect. (Cplt. ¶¶ 20–24) Ocwen directed Hawkins that, until the final modification was sent out, he should continue making payments at the TPP amount. (Cplt. ¶¶24–28)

In February 2015, Ocwen raised the subject of a lien from Sears; Hawkins's representative replied that this lien, which had been addressed by the Affidavit, "did not pertain to Hawkins." (Cplt. ¶¶ 29–31) On March 3, 2015, an Ocwen relationship manager named Charles told Hawkins's representative that he needed to satisfy the lien or otherwise have it removed from the County records. (Cplt. ¶ 33) Checking, Hawkins found that the County had no such lien on file. (Cplt. ¶ 34)

Hawkins made monthly payments at the TPP amount through March 2015. (Cplt. ¶ 28) On March 18, 2015, an Ocwen employee said the file would be "escalated" based on the lien issue. (Cplt. ¶ 35) Ocwen then restored the payments to the pre-TPP amount. (Cplt. ¶ 32) On March 25, 2015, however, OneWest moved in the foreclosure proceeding to set aside the final judgment of foreclosure. (Cplt. ¶ 36)

On March 31, 2015, Asplund required that Hawkins supply a copy of the title search conducted at the time of the origination of the mortgage. Hawkins did so; it showed that title was clear of liens in 2006. (Cplt. ¶¶ 37–40)

3

On April 23, 2015, an Ocwen representative communicated to Hawkins that the Affidavit and title search were rejected as insufficient. She directed him to contact Asplund as to the next steps. Asplund replied that he was still trying to get an answer from Ocwen's "title experts" as to what would be required to clear the Sears lien. (Cplt. ¶¶ 42–44)

By letter dated May 13, 2015, Ocwen denied the request for a permanent loan modification. (Cplt. ¶ 45) On May 15, 2015, an Ocwen employee named Ross said that Ocwen needed seven business days to work on the file and try to get a response regarding the Sears lien. (Cplt. ¶ 47) On June 19, 2015, Hawkins received a letter from Ocwen stating that the HAMP request was still under review; on June 29, 2015, an Ocwen employee stated that the Affidavit of Title was being resubmitted; on July 7, 2015, Asplund advised that the file was still being reviewed. (Cplt. ¶¶ 48–50)

On July 15, 2015, an Ocwen employee advised Hawkins that the loan was being transferred from Ocwen to defendant Seterus, Inc., for servicing as of August 1, 2015. (Cplt. ¶ 51)

In mid-September, Seterus proposed to Hawkins a new TPP on less favorable terms than the prior one. (Cplt. ¶¶ 52–53) On September 29, 2015, Seterus sent a Notice of intent to foreclose. (Cplt. ¶ 54)

On January 20, 2016, Hawkins filed the Complaint in this action in New Jersey Superior Court, Law Division, Union County. (ECF no. 1-1 at 6) On March 11, 2016, defendants removed the action, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF no. 1) The Complaint asserts three causes of action: Count One (Breach of Contract); Count Two (Good Faith and Fair Dealing); and Count Three (New Jersey Consumer Fraud Act).

## III. DISCUSSION

### A. Count 1 – Breach of Contract

Count 1 of the complaint alleges breach of contract. The September 24, 2014 letter, it alleged, was an offer to modify the mortgage under HAMP. Hawkins allegedly accepted the offer by complying with the TPP and supplying

all required documents. Ocwen and OneWest, however, declined to enter into the modification, thereby breaching the parties' agreement. Seterus, although it took over servicing thereafter, is alleged to be obligated under the agreement as successor to OneWest and Ocwen. (Cplt. ¶¶ 55–66) The defendants essentially argue that there was no contractually binding agreement to modify the loan.

> [A] contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance. *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526, 95 A.2d 391 (1953). To be enforceable, a contract must be sufficiently definite in its terms that the performance to be rendered by each party can be ascertained with reasonable certainty. *Savarese v. Pyrene Mfg. Co.*, 9 N.J. 595, 89 A.2d 237 (1952).

*Friedman v. Tappan Dev. Corp.*, 22 N.J. 523, 531, 126 A.2d 646, 650 (1956).

New Jersey case law supports the proposition that such a TPP letter may give rise to a binding contract:

> Before reviewing the record and setting forth our own legal analysis, we briefly discuss the most pertinent case law on which the parties rely. In *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir.2012), the court cogently explained the federal HAMP program, which was designed to address the residential mortgage foreclosure crisis by encouraging lenders to extend loan modifications to qualified mortgagors. *Id.* at 556–57; *see* Emergency Economic Stabilization Act of 2008, 12 *U.S.C.A.* § 5219(a)(1). The court concluded that, even though there is no private cause of action under HAMP, a mortgagor may nonetheless assert a common-law contract claim based on a bank's failure to honor promises made in a HAMP Trial Period Plan Agreement. The court reasoned that the terms of the TPP Agreement must be construed as a promise by the bank that if the debtor complies with its terms, she will be offered a loan modification. The court thus described the TPP Agreement as including "a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain." *Wigod, supra,* 673 F.3d at 562. The court reasoned that "a reasonable person in Wigod's position would read the TPP as a definite offer to provide a permanent modification that she could accept so long as she satisfied the conditions." *Ibid.*; *see also Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878, 883–85 (9th Cir. 2013); *Young, supra,* 717 F.3d at 234; *Bosque v. 277 Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342 (D. Mass. 2011); *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th

5

780, 154 *Cal.Rptr.*3d 285, *rev. denied,* 2013 *Cal. LEXIS* 5801 (July 10, 2013).

*Arias v. Elite Mortgage Grp., Inc.*, 439 N.J. Super. 273, 276–77, 108 A.3d 21, 22–23 (App. Div. 2015).

Whether the TPP letter, which is subject to interpretation, was intended as such a binding offer, poses factual issues. Whether the borrower fully complied with its express and implied terms, and so on, remain issues as well. I cannot say, however, that the plaintiff's theory is so clearly foreclosed as a matter of New Jersey law that his claim must be dismissed at the pleading stage. Further exploration of both the law and the facts must await summary judgment.

Seterus urges further that it was not the loan servicer at the time the alleged contract was formed in September 2014, but took over servicing only in July 2015. Seterus, however, acted as the agent of the lender. Moreover, it is alleged that Seterus participated in what was a continuing breach, by offering a less favorable TPP and seeking foreclosure. Finally, the complaint seeks injunctive relief in the form of reinstatement of the modification on the terms allegedly offered originally. As loan servicer, Seterus is plausibly alleged to be a proper subject of such injunctive relief. Once again, the Court is not prejudging any of these issues, but believes they have been adequately alleged.

The motions to dismiss Count 1 are denied.

### B.   Count 2 – Good Faith and Fair Dealing

Count 2 of the Complaint asserts a breach of the covenant of good faith and fair dealing that is implied in every contract. *See generally Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997).

The defendants essentially argue that, because there is no contract, there can be no breach of this implied covenant. I have already denied the motions to dismiss Count 1 on the basis of their having been no contract. I therefore deny the motions as to Count 2 as well.

### C. Count 3 – New Jersey Consumer Fraud Act

Count 3 of the Complaint asserts a claim under the New Jersey Consumer Fraud Act ("NJCFA").

Once again, there is authority for the proposition that drawing the borrower into a TPP while wrongfully withholding the ultimate loan modification may be an unconscionable practice under the NJCFA:

> [C]ase law suggests that an agreement that purports to bind a debtor to make payments while leaving the mortgage company free to give her nothing in return might violate the New Jersey Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –195. *See Gonzalez v. Wilshire Credit Corp.*, 207 *N.J.* 557, 576–78, 25 *A.*3d 1103 (2011). *Gonzalez* involved a different factual scenario from the one in this case. However, in *Gonzalez* the Court strongly signaled its disapproval of post-foreclosure financing deals that essentially turned debtors into "cash cows" without ever restoring their mortgages to current status. *Id.* at 570, 582–83, 25 *A.*3d 1103.

*Arias*, 439 *N.J. Super.* at 277, 108 *A.*3d at 23. *See also Miller v. Bank of Am. Home Loan Servicing, L.P.*, 439 *N.J. Super.* 540 (App. Div. 2015).

Deciding whether that is so in a particular case poses factual issues that exceed the scope of review on a Rule 12(b)(6) motion. The motions to dismiss Count 3 are denied.

### ORDER

The defendants having moved to dismiss the complaint (ECF nos. 7, 10); and the plaintiff having files oppositions (ECF nos. 11, 12); and the defendant having filed replies (ECF nos. 15, 16); and the court having considered the submissions, and good cause appearing therefor;

IT IS this 27th day of September, 2016

ORDERED that the motions to dismiss (ECF nos. 7, 10) are DENIED.

HON. KEVIN MCNULTY, U.S.D.J.